UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| TOMAS PRUNEDA, individually and on behalf of others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>XTREME DRILLING & COIL SERVICES, INC.,<br><br>    Defendant. | CIVIL NO. SA-16-CV-91-DAE |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

TO:   Honorable David A. Ezra
      Senior United States District Judge

Pursuant to the order of referral in the above-styled and numbered cause of action to the undersigned United States Magistrate Judge[1] and consistent with the authority vested in United States Magistrate Judges under the provisions of 28 U.S.C. § 636(b) and rule 1 of the Local Rules for the Assignment of Duties to United States Magistrate Judges in the Western District of Texas, the following report is submitted for your review and consideration.

## I.  JURISDICTION

Plaintiff alleges federal subject matter jurisdiction under 28 U.S.C. § 1331.[2]

---

[1] Text-only entry dated April 20, 2016.

[2] Docket no. 1 at 3.

## II.  SUMMARY OF PROCEDURAL HISTORY

Plaintiff Tomas Pruneda ("Pruneda") initiated this case on January 27, 2016, when he filed his original complaint, requested issuance of summons, and filed a notice of consent to join the suit by Marcus Munoz.[3]  On February 4, 2016, Pruneda filed his first "motion for conditional certification, for disclosure of contact information, and to send notices."[4]  On March 12, 2016, defendant Xtreme Drilling & Coil Services, Inc. ("defendant") filed a response in opposition.[5]

---

[3] Docket nos. 1, 2, 4.  The original complaint filed on January 27, 2016, included Marcus Munoz ("Munoz") as a named plaintiff.  Docket no. 1.  On March 21, 2016, the District Judge dismissed Munoz as a plaintiff.  Docket no. 15.  Thus, this report does not refer to Munoz as a named plaintiff and disregards arguments made on behalf of Munoz.

[4] Docket no. 6.  Pruneda submitted six exhibits in support of his motion: Exhibit A–proposed notice; Exhibit B–proposed consent; Exhibit C–proposed postcard; Exhibit D–declaration of Josh Sanford dated Feb. 4, 2016; Exhibit E–declaration of plaintiff Tomas Pruneda; dated Feb. 2, 2016; and Exhibit F–declaration of plaintiff Marcus Munoz dated Feb. 2, 2016.  Id. exhibits A-F.

[5] Docket no. 12.  Defendant submitted five exhibits in support of its motion: Exhibit 1–letter from defendant to Marcus Munoz dated Oct. 8, 2013; Exhibit 2–letter from defendant to Marcus Munoz dated Feb. 5, 2014; Exhibit 3–Service Supervisor job description dated Jan. 2013; Exhibit 4–letter from defendant to "Eric Pruneda" dated Oct. 1, 2013, and January 2013 Service Supervisor and July 2012 operations manager position descriptions; and Exhibit 5–personal covenants and post-employment obligations signed by "Eric Pruneda" dated Oct. 14, 2013, and operations manager position description.  Id. exhibits 1-5.  To be clear, plaintiff states his name is "Tomas Pruneda," not "Eric Pruneda," but no party argues the documents signed by "Eric Pruneda" do not pertain to plaintiff.

Defendant summarized its grounds for opposing Pruneda's first motion to certify as follows:
> First, the proposed group of class members are not similarly situated.  Second, Plaintiffs' proposed class is vague and overbroad.  Third, Plaintiffs have failed to establish that similarly situated employees want to join the lawsuit.  In the alternative, Xtreme requests the Court postpone deciding Plaintiffs' Motion for Certification to allow the parties to engage in discovery and file dispositive motions to resolve the exemption issue, which would render certification unnecessary.

Id. at 2.

On March 18, 2016, Pruneda filed a reply.[6]  On March 22, 2016, the undersigned issued a report recommending that Pruneda's motion be granted.[7]

On March 23, 2016, Judge Ezra entered an order striking plaintiff's reply brief on the ground it exceeded the page limitations for reply briefs (it was seven pages) and the reply brief did not use the standard, 12-point font consistently (the footnotes appeared to be in 10-point font).[8]  On April 5, 2016, defendants filed an objection to the report and recommendation.[9]  On April 8, 2016, plaintiff filed a "response to objections and in support of" the recommendations in the report, which did not object to any recommended ruling in the report.[10]

On April 14, 2016, Judge Ezra did not adopt the recommended rulings in the report and denied Pruneda's motion for conditional certification in an eleven-page order that, in sum, did not expressly adopt defendant's position that certification was improper based on only one affidavit,[11] but found that Pruneda's "affidavit is insufficient to create a factual nexus that binds Plaintiff and potential class members who worked as Service Supervisors as victims of a

---

[6] Docket no. 14.

[7] Docket no. 16.

[8] Docket no. 18.  Defendant's motion to strike was docketed after the District Clerk docketed the March 22 report.

[9] Docket no. 21. Defendant objected on the following grounds: "Xtreme specifically objects to the Magistrate Judge's finding that a single declaration is sufficient to satisfy Plaintiffs' burden during the notice stage of conditional certification and objects to the Recommendation to the extent it relied on Plaintiffs' Reply." Id. at 2.

[10] Docket no. 22.

[11] Docket no. 23 at 8 ("The Court finds the reasoning of the Southern District is persuasive.  Therefore, the Court finds that a plaintiff need not present evidence at this early stage of litigation that individuals actually want to opt-in to the lawsuit.").

particular alleged policy or practice" because Pruneda "states nothing about how other Service Supervisors were paid nor can he because a Service Supervisor may have no actual knowledge of how other employees receive compensation."[12]  The Court stated: "Additional affidavits would be helpful to the Court to show that Defendant implemented the same compensation policy for Service Supervisors."[13]  Because the Court held certification was not appropriate, it did not address any other recommended rulings about notice procedures or forms or other matters.

Less than one week later, on April 19, 2013, Pruneda filed a renewed motion for conditional certification, disclosure, and notice, as well as a consent to join form for Gary Odum.[14]  Pruneda incorporated by reference his first motion for certification[15] and four of the six exhibits attached to the first motion:  Exhibit A–proposed Notice of Right to Join Lawsuit; Exhibit B–proposed Consent to Join Collective Action; Exhibit C–proposed postcard; and Exhibit D–declaration of Tomas Pruneda, dated February 2, 2016.[16]  Pruneda's second motion also submits four new exhibits: Exhibit E–proposed Text of Electronic Transmissions; Exhibit

---

[12] Id. at 10.

[13] Id.

[14] Docket no. 24.

[15] To be clear, Judge Ezra did not accept any of the recommended rulings in the March 22 report; accordingly, this report fully considers plaintiff's requests for certification, disclosure and notice (even if the arguments may have been addressed in the March 22 report).  With the exception of one main request by Pruneda (for electronic consent) and certain arguments by defendant (for example, objections to electronic consent and Pruneda's proposed notice), Pruneda's second motion and defendant's response primarily present grounds previously raised in the briefing on Pruneda's first motion to certify.

[16] Docket no. 6, Exhibits A-C and E.  To be clear, Pruneda's declaration dated Feb. 2, 2016 was identified as exhibit E to the first motion to certify and is listed as exhibit D to the second motion to certify.  See docket no. 24 at 2.

F–proposed electronic Consent to Join Collective Action; Exhibit G–supplemental declaration of Josh Sanford, dated April 18, 2016; and Exhibit H–declaration of Gary Odum, dated April 15, 2016.[17]

On April 20, 2016, Judge Ezra referred the motion to the undersigned.[18] On April 21, 2016, Judge Ezra denied defendant's motion to strike the six-page renewed motion on the ground it exceeds the page limitation because it incorporates by reference Pruneda' first motion (which was 20 pages long), and mooted Pruneda's belated motion to exceed the page limitation.[19]

On April 26, 2016, defendant filed a response in opposition to plaintiff's renewed motion.[20] Defendant attaches four exhibits to its response: Exhibit 1—job description for Service Supervisor; Exhibit 2—October 1, 2013 "employment offer" to "Eric Pruneda," accepted on October 14, 2013; Exhibit 3—revised Notice of Right to Join Lawsuit; and Exhibit 4—Notice of Right to Join Lawsuit proposed by defendant.[21]

### III.  DISCUSSION

**A.     Summary of Arguments**

Pruneda's second motion for conditional certification, disclosure, and notice again asks for the certification of a class defined as "[e]ach former and current Service Supervisor (or

---

[17] Docket no. 24, Exhibits E-H.  In addition, Pruneda submitted a proposed order.

[18] Text-only order dated April 20, 2016.

[19] Docket no. 28 and text-only order dated April 21, 2016.

[20] Docket no. 29.

[21] Id., Exhibits 1-4.

similar position) who worked for Defendant at any time after January 27, 2013."[22]  Pruneda's second motion states the Court denied Pruneda's first motion finding "that Plaintiff's affidavit stated insufficient facts concerning how other Service Supervisors received compensation, and thus failed to show that he and other Service Supervisors were subject to a single policy or decision."[23]  Plaintiff states that he presents the new declaration from Gary Odum "which addresses the Court's concerns about Defendant's pay policies for its Service Supervisors."[24]  Among other things addressed in Odum's declaration that are not addressed in Pruneda's declaration, Odum testifies that he "know[s]" the pay policy was the same for all Service Supervisors because he "frequently discussed Defendant's pay policies with other Service Supervisors" and, "in late 2014 or early 2015," defendant held "a meeting for all Service Supervisors in which we were all told we were all paid according to the same method, namely a salary."[25]

Pruneda's only new request in his second motion is the request "that the Court approve the distribution of Plaintiff's Electronic Consent to Join (ECF No. 24-5), which can be signed and returned electronically."[26]  Otherwise, as in his first motion, Pruneda asks for certification of a class of "[e]ach former and current Service Supervisor (or similar position) who worked for Defendant at any time after January 27, 2013," and entry of an order requiring defendant to

---

[22] Docket no. 24 at 1, 3-5.

[23] Id. at 1-2.

[24] Id. at 2.

[25] Docket no. 24-8 at 2.

[26] Docket no. 24 at 5.  See also docket no. 29 at 11.

produce "contact information of those putative class members," that is, "names, mailing and email addresses" within two weeks after the entry of the order; allowing plaintiff's counsel to send a follow-up postcard via United States Mail; approving Pruneda's proposed notice and consent to join forms; and allowing plaintiff 90 days from the date of the complete disclosure of all contact information to distribute the notice and file the consent forms.[27]

In response, defendant again asks the Court to delay its ruling on certification until after the parties have conducted discovery and defendant can file a dispositive motions seeking judgment as a matter of law that Pruneda and Odum, as Service Supervisors, were exempt from the overtime pay requirements of the FLSA which, defendant argues, can make certification unnecessary.[28]  Further, defendant argues holding the certification decision in abeyance avoids "any confusion that could arise from a potential opt-in consenting to join and then discovering he or she is not entitled to recover any damages."[29]  Otherwise, defendant argues Pruneda's request to certify is improper for three main reasons.  First, defendant argues Odum's declaration is not sufficient to support certification because the District Court found that Pruneda's February 2, 2016 declaration was inadequate to show the proposed class is similarly situated such that, as argued by defendant, Odum's declaration fails under the "single affidavit" rule.[30]  To the extent the District Judge's April 14 ruling "held that Plaintiff is not required to show that individuals

---

[27] Docket no. 24 at 4-5.

[28] Docket no. 29 at 4-5, 18.

[29] Id.

[30] Id. at 6.

want to opt-in to the lawsuit," defendant asks the Court to "reconsider such holding."[31]  Second, defendant notes that Odum's declaration only addresses a proposed class of Service Supervisors, not also other "similar positions."[32]  Defendant opposes the certification of a class that would include "similar positions" on the ground it is vague, overbroad, and improper.[33]  Third, if the Court grants conditional certification, defendant asks the Court to "preclude notice by e-mail, prohibit use of electronic consent forms, limit the opt-in period to sixty days, prohibit the use of reminder notices, limit the information Xtreme is required to disclose to names and last known mailing addresses for the potential class members, preclude Plaintiff from sending copies of any pleadings with the notice, and modify the contents of the proposed notice."[34]

**B.     Analysis**

As a threshold matter, no party has asked for an in-court hearing and, as with the March 22 report, the Court has considered that all parties are represented by counsel who reside outside of this District. Further, both sides have had the opportunity to submit evidence in support of their respective positions and no party has indicated paper submissions do not create a sufficient record for the determinations at issue.

With respect to the question of whether the Court should rule on Pruneda's second motion for certification of a collective action on behalf of Service Supervisors at this time, defendant argues it is "pragmatic" and "efficient" for the Court to "delay its ruling" on

---

[31] Id. at 9.

[32] Id. at 6.

[33] Id. at 7-8.

[34] Id. at 11, 11-17.

certification until after discovery, dispositive motions, and a determination by the Court whether Service Supervisors fall within the "executive" or "highly-compensated employee" exemptions to the FLSA's overtime pay provisions.[35] In support, defendant argues deferring a ruling "would preserve judicial resources, as it would allow the Court to resolve the Renewed Motion at the same time it resolves a dispositive motion from Xtreme" and "would prevent any confusion that could arise from a potential opt-in consenting to join and then discovering he or she is not entitled to recover any damages."[36] Defendant presents no argument or evidence to show deferring a ruling would conserve any resources of the *parties* (who still would be participating in mutual discovery and engaging in a motion practice), nor does defendant understandably guarantee there will be no need for further discovery or additional motions if the case proceeds to the opt-in stage, nor does defendant address the possible "confusion that could arise from a potential opt-in" plaintiff filing his or her separate lawsuit while the motion to certify is held in abeyance (perhaps to avoid a statute of limitations issue, as referenced again, below).

The Court carefully has considered defendant's argument that "[o]ther courts, including in the Western District of Texas, have delayed conditional certification to allow the parties to develop the merits of the individual claims," citing in particular Judge Rodriguez's January 25, 2016 decision in Cantu v. Circle Bar A, Inc. to deny without prejudice plaintiff's motion to certify a collective action.[37] But, the factual record developed by the employer in Cantu is clearly distinguishable from the factual record developed by defendant in this case. In Cantu, the

---

[35] Id. at 3, 4-5.

[36] Id. at 5.

[37] Id.

employer supported its opposition to certification with affidavits from six former "sand coordinators who state that they performed various managerial and supervisory tasks and they do not with to join the lawsuit."[38]  The "fact dispute created by the opposing affidavits regarding whether the sand coordinators performed supervisory duties" in Cantu was central to Judge Rodriguez's determination that "there exist material questions of fact as to whether other sand coordinators performed different duties than Cantu . . . such that the other sand coordinators may not be similarly situated to Cantu."[39]  Here, defendant has not submitted affidavits or other evidence to create a similar fact dispute about, for example, job classifications or duties of putative class members.[40]  Given that Pruneda is willing to undertake the responsibility and expense of sending the notices to putative class members and filing any consent forms, defendant has not explained why it would not be equally "pragmatic" and "efficient" to proceed with conditional certification so there is a possibility of a *class-wide* determination of the applicability of any FLSA exemptions applicable to defendant's Service Supervisors.  Defendant has presented no evidence to support its position an opt-in plaintiff would be *confused* by joining the case before defendant's dispositive motion is filed.  As noted in the March 22 report, defendant's argument that discovery and motions should occur before certification seems to be the same

---

[38] Cantu, et al. v. Circle Bar A, Inc., SA-15-CA-468-XR, docket no. 30 at 2-3 and nn.2, 3 (Jan. 25, 2016).

[39] Id.

[40] See docket no. 22 at 3-4 ("Defendant has access to his employees and Pruneda's co-workers, including service supervisors who may want to join this case, and yet, failed to submit a single declaration disputing Pruneda's experience and his knowledge of Defendant's employment and pay practices.").  Although Pruneda has the burden on his motion to certify, unlike the employer in Cantu, defendant has not presented conflicting evidence.

argument Judge Ezra rejected in Casanova v. Gold's Texas Holdings Group, Inc.[41]

At the same time, defendant does not directly address the potential benefit to defendant by a decision to delay a ruling on plaintiff's second motion to certify. When objecting to the form notice submitted by Pruneda, defendant argues the notice must be directed to individuals "'who worked for [defendant] in the three years prior to the date on which the Court conditionally certifies the class[].' Garcia, 2015 U.S. Dist. LEXIS 50384, at *18 (Ezra, J.)"—not three years from the date on which plaintiff initiated suit or first sought certification.[42] Defendant does not concede that the statute of limitations should, or will, be tolled (for Pruneda and Odum or for putative class members) while the Court holds in abeyance Pruneda's renewed motion to certify. Because Judge Ezra's April 14 ruling found that it "may credit the assertion that aggrieved individuals exist where 'there is a factual nexus that binds the named plaintiffs and potential class members as victims of a particular alleged policy or practice,'"[43] but that Pruneda's February 2, 2016 declaration was "insufficient to create a factual nexus that binds Plaintiff and potential class members who worked as Service Supervisors as victims of a particular alleged policy or practice,"[44] and Odum's declaration now appears to fulfill Judge

---

[41] In Casanova, Judge Ezra, during the "notice stage" of the case, "decline[d] at this point to determine whether personal trainers are exempt as a matter of law because this determination is a fact specific inquiry, and at this stage of the proceedings, it would be inappropriate to rule on the merits." No. SA:13 CV 1161 DAE, 2014 WL 6606573, at *3-4 (W.D. Tex. Nov. 19, 2014). Similarly, the present case is at the "notice stage." Defendant previously "recognize[d] that, generally, courts do not consider the merits of an exemption during the notice stage." Docket no. 12 at 4.

[42] Docket no. 29 at 17.

[43] Docket no. 23 at 8.

[44] Id. at 10.

Ezra's request for "more evidence,"[45] based on the record in this case, it appears plaintiff has satisfied his burden to show "a similarly situated group of Service Supervisors exists"[46] sufficient for conditional certification as a collective action.

With respect to the definition of the class, in full consideration of the parties' additional briefing and evidence, it is recommended that the Court find Pruneda has satisfied the "lenient standard"[47] to proceed on behalf of a class of "Service Supervisors" such that a class of Service Supervisors employed by Defendant in the prior three years (that is, the three years prior to the date on which Judge Ezra enters any order of conditional certification) should be certified.[48] In particular, the newly submitted declaration from Odum appears to supply the information addressed by Judge Ezra in his April 14 order. Among other things, Odum testifies his primary job was "manual labor," operating equipment; he "frequently discussed Defendant's pay policies with other Service Supervisors;" "at least once Defendant . . . conduct[ed] a meeting for all Service Supervisors in which we were all told we were all paid according to the same method,

---

[45] Id.

[46] Id. at 9.

[47] Pacheco v. Aldeeb, No. 5:14 CV 121 DAE, 2015 WL 1509570, at *2 (W.D. Tex. Mar. 31, 2015) ("'The court's determination at [the notice] stage is made using a 'fairly lenient standard' because the court generally has minimal evidence" and because "[t]he remedial nature of the FLSA . . . militate[s] strongly in favor of allowing cases to proceed collectively'") (citations omitted). See also Villarreal v. St. Luke's Episcopal Hosp., 751 F. Supp. 2d 902, 916 (S.D. Tex. 2010) ("Liberally construing the FLSA to effect its purposes, the court finds that it is enough for the plaintiff to present evidence that there may be other aggrieved individuals to whom a class action notice should be sent, without requiring evidence that those individuals actually intend to join the lawsuit.").

[48] Garcia v. TWC Administration, LLC, No. SA:14 CV 985 DAE, 2015 WL 1737932, at *18 (W.D. Tex. Apr. 16, 2015).

namely a salary;" "[t]his meeting occurred sometime in late 2014 or early 2015;" the meeting "was conducted by Defendant's Human Resources Directors;" he "did not regularly supervise any group of employees" or perform other duties typically undertaken by supervisors and he observed other Service Supervisors "perform[] the same duties."[49] To the extent defendant asks the Court to "reconsider" the District Judge's April 14 ruling which "held that Plaintiff is not required to show that individuals want to opt-in to the lawsuit,"[50] the undersigned does not "reconsider," but rather, attempts to apply the District Judge's ruling as law of the case binding on the undersigned.

To the extent Pruneda seeks to certify a broader class that would include not only Service Supervisors but also employees who work in a "similar position," as discussed in the March 22 report, Pruneda has not provided argument, authority, or evidence to show the class is not vague.[51] Specifically, Pruneda has not provided argument, authority, or evidence to show that the Court should undertake a fact-intensive inquiry into the job duties of non-Service Supervisor employees to decide if the employee was, or is, in a "similar position," especially when Pruneda has not submitted any evidence to show "similar positions" are, or were, subject to a "single pay policy."[52] On April 14, Judge Ezra held that Pruneda's declaration was insufficient "to

---

[49] Docket no. 24-8 at 1-3.

[50] Docket no. 29 at 9.

[51] Defendant's response to Pruneda's original motion to certify represented that Munoz—who is no longer a party—was not employed as a Service Supervisor, but was an "Operations Manager and a District Manager." Docket no. 12 at 3 n.2 . With respect to Pruneda's renewed motion, the evidence shows both Pruneda and Odum were employed as Service Supervisors.

[52] See docket no. 23 at 10.

demonstrate a reasonable basis to believe that a class of similarly situated Service Supervisors exists that were subject to a single policy or decision."[53] Odum's subsequently-filed declaration is focused on the position of Service Supervisor, not any other position. Thus, Pruneda's second motion does not provide argument, authority, or evidence to show the putative class should be expanded to include other "similar position[s]."

With respect to Pruneda's request that defendant disclose "all contact information for those who meet the definition of the proposed collective class,"[54] as addressed in the March 22 report, in accordance with Judge Ezra's ruling in Garcia v. TWC Administration, LLC, defendants should be ordered to produce, in a usable electronic format, the names and last known addresses for all putative class members.[55] Pruneda has not demonstrated why the disclosure of any other information (such as dates of birth, telephone numbers, e-mail addresses, and Social Security numbers) regarding purported class members is appropriate at this time.

With respect to the method of notice, Pruneda seeks to provide the court-approved notice to potential class members by e-mail.[56] As addressed in the March 22 report, in accordance with Judge Ezra's ruling in Morgan v. Rig Power, Inc., Pruneda has not demonstrated that notice by e-

---

[53] Id.

[54] Docket no. 24 at 2, 5; docket no. 24-9 at 3; docket no. 6 at 18.

[55] In Garcia, Judge Ezra denied a plaintiff's request "to produce the names, all known addresses, all phone numbers, dates of birth, all known email addresses (both work and personal), Social Security numbers, and dates of employment for all potential class members employed from three years prior to the filing of this lawsuit to the present." 2015 WL 1737932, at *4-5. Judge Ezra limited the production to "names, last known addresses, and dates of employment for all putative class members." The Court finds Garcia to be direct precedent and otherwise persuasive.

[56] Docket no. 24 at 2, 5; docket no. 24-9 at 4; docket no. 6 at 9.

mail is appropriate at this time.[57]

With respect to the length of the opt-in period, Pruneda requests an opt-in period of ninety days.[58] As addressed in the March 22 report, in accordance with Judge Ezra's ruling in McCloud v. McClinton Energy Group, LLC, the opt-in period should be 60 days.[59]

With respect to follow-up contact, Pruneda requests follow-up contact with putative class members who have not responded within thirty days after the mailing of initial notice, regardless of whether there is any reason to conclude the recipient did not receive the initial mailing.[60] As addressed in the March 22 report, in accordance with Judge Ezra's ruling in Graham v. Jet Specialty, Inc., Pruneda has not demonstrated that a reminder notice is appropriate at this time.[61]

---

[57] In Morgan Rig v. Rig Power, Inc., Judge Ezra denied a plaintiff's request for production of e-mail addresses "at this early stage of litigation," noting that "due to the fact that oil workers frequently move, Plaintiffs may request the production of additional information to assist them in reaching those class members whose mailed notices come back undeliverable." 2015 U.S. Dist. LEXIS 166644, *14 (W.D. Tex. Dec. 10, 2015). The Court finds Morgan to be direct precedent and otherwise persuasive, and further, Pruneda "concede(s) that secondary notice by email is not the norm in the Fifth Circuit." Docket no. 14 at 6.

[58] Docket no. 24 at 2, 5; docket no. 24-9 at 3; docket no. 6 at 12.

[59] In McCloud, Judge Ezra found "potential plaintiffs may be somewhat difficult to reach, as they are not always dispatched form the Midland yard and they conduct the bulk of their work offsite at the Defendants' job sites" and held "a 60 day opt-in period reasonable." No. 7:14 CV 120, 2015 WL 737024, at *10 (W.D. Tex. Feb. 20, 2015).

[60] Docket no. 24 at 2, 5; docket no. 24-9 at 3; docket no. 6 at 17.

[61] In Graham, Judge Ezra stated: "'District courts are split as to whether reminder notices to potential class members are proper in FLSA actions,' and may deny requests for reminder notices where the "plaintiff fail[s] to identify any reason why such notice [is] necessary." No. MO 15 CV 135 DAE, 2016 WL 154846, at *8 (W.D. Tex. Jan. 11, 2016) (citing Jones v. Cretic Energy Servs., LLC, ⸺ F. Supp. 3d ⸺, 2015 WL 8489978, at *10 (W.D. Tex. Dec. 9, 2015) (citing Guzelgurgenli v. Prime Time Specials Inc., 883 F. Supp. 2d 340, 357–58 (E.D.N.Y. 2012)). In Graham, the Court held "because Plaintiff has not listed any extenuating circumstances which would necessitate a follow-up notice, the court finds that a single notice is

With respect to the contents of the notice, Pruneda asks to include a copy of the original complaint with the notice.[62] Pruneda has not cited any authority in support of his request that a copy of the complaint should be included with the notice at this time.[63]

As addressed below, if the recommendations in this report are accepted, the parties will have an opportunity to confer prior to submitting an agreed notice and consent form that conforms to the rulings made by Judge Ezra when addressing this report. With respect to defendant's objections to the Pruneda's proposed notice,[64] based on the current record, unless otherwise noted below, the changes to the proposed notice reflected in the redline version of the notice submitted by defendant as an attachment to its response[65] are well-taken and should be implemented. In particular, the three-year time period should be measured in reference to the date on which Judge Ezra might enter any order of conditional certification, the potential plaintiffs should be informed they could be liable for a share of costs if they do not prevail,[66] the

---

appropriate." Id. Here, Pruneda's counsel testified in his originally-filed declaration that, in sum, at times he does not receive his mail at all or in a timely fashion. Docket no. 6, exhibit 4. Pruneda's renewed motion does *not* list Pruneda's counsel's originally filed declaration as an exhibit to be incorporated by reference into the renewed motion. See docket no. 24 at 2. Even if it is appropriate to again refer to the originally-filed declaration, as noted in the March 22 report, counsel's personal experience with mail does not demonstrate that repeated contact with putative class members is appropriate at this time.

[62] Docket no. 24 at 2, 5; docket no. 24-9 at 3; docket no. 6 at 16-17.

[63] See id.

[64] Pruneda first submitted the "Proposed Notice of Right to Join Lawsuit" as an attachment to his February 4 motion to certify. Docket no. 24 at 2.

[65] See docket no. 29 at 16-17; docket no. 29-3 at 1-4.

[66] Garcia, 2015 WL 1737932, at *19.

second paragraph of section 4 be removed as duplicative of section 8, the reference to contacting the Clerk of Court in section 9 should be removed, a sentence should be added in section 6 ("If you join the lawsuit, you designate named Plaintiff, Tomas Pruneda, as your agent to make decisions on your behalf concerning the lawsuit, and all other matters pertaining to the lawsuit"), and certain typos should be corrected.  But, based on the current record, defendant's objection that the case caption that appears at the top of the first page of the proposed notice submitted by plaintiff should be deleted[67] should be overruled such that the case caption can appear at the top of the notice.

### IV.  RECOMMENDATIONS and ORDER

Based on the foregoing discussion:

- it is **recommended** that:

    - Pruneda's "renewed motion for conditional certification, for disclosure of

---

[67] Docket no. 29 at 16.  In support of its request to delete the case caption, defendant argues it "could be misunderstood as being endorsed by the Court" and cites In re Wells Fargo Wage & Hour Employment Practices Litig., 2013 U.S. Dist. LEXIS 70040, at *14 (S.D. Tex. May 17, 2013).  The cited portion of In re Wells Fargo addresses whether a notice should include language in the text of the notice which states the court approved the notice and does not appear to address the question of whether the notice can bear the case caption.  See id. ("Defendants argue that the notice should exclude any indication that it was approved by or authorized by the court. Dkt. 98.  Defendants cite a Third Circuit case, Sperling v. Hoffmann-La Roche, Inc., 862 F.2d 439 (3d Cir. 1988), and a Northern District of Illinois case, Flores v. Lifeway Foods, Inc., 289 F. Supp. 2d 1042 (N.D. Ill 2003), in support of this contention.  Id.  In Sperling, the Third Circuit stated that 'the better practice would be to exclude any reference in the notice indicating it had been approved or authorized by the court,' but it specifically declined to reach the question of 'whether the statement that the notice had been 'authorized' by the court should have been included.' Sperling, 862 F.2d at 447.").  In In re Wells Fargo, plaintiff "agreed to remove the words 'court authorized' in the title of the notice since the body of the document already informs potential plaintiffs that the court authorized the notice," an action approved by the Court.  Otherwise, the Court overruled defendant's objections to the notice.  Id. at *15-*16.

- contact information, and to send notices"[68] be **GRANTED IN PART and DENIED IN PART** as set out in this report;

- defendant's embedded motion to hold in abeyance plaintiff's renewed motion for certification until the parties engage in discovery, file disposition motions, and the Court rules on dispositive motions be **DENIED**; and

- any requests for relief not expressly granted be **DENIED**.

● it is **ordered** that:

- unless otherwise specified by the District Judge in the order to be entered on this report, within **fourteen days** after the entry of the order on this report, the parties must confer and submit an agreed notice and consent form in accordance with the Court's rulings; and

- this case is **returned** to the District Court.

### V. INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO OBJECT/APPEAL

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either: (1) electronic transmittal to all parties represented by an attorney registered as a Filing User with the Clerk of Court pursuant to the Court's Procedural Rules for Electronic Filing in Civil and Criminal Cases; or (2) by certified mail, return receipt requested, to any party not represented by an attorney registered as a Filing User. As provided in 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b), any party who desires to object to this report must **file** with the District Clerk and **serve** on all parties and the Magistrate Judge written Objections to the report and recommendation within **14** days after being served with a copy, unless this time period is modified by the District Court. A party filing Objections must specifically identify those

---

[68] Docket no. 24.

findings, conclusions or recommendations to which objections are being made and the basis for such objections; the District Court need not consider frivolous, conclusive or general objections.

A party's failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report will bar the party from receiving a *de novo* determination by the District Court.[69] Additionally, a party's failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report will bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.[70]

**SIGNED** and **ENTERED** this 28th day of April, 2016.

*Pamela A. Mathy*
**PAMELA A. MATHY**
**UNITED STATES MAGISTRATE JUDGE**

---

[69] See Thomas v. Arn, 474 U.S. 140, 150, 106 S.Ct. 466, 472 (1985).

[70] Acuna v. Brown & Root Inc., 200 F.3d 335, 340 (5th Cir. 2000); Douglass v. United Serv. Auto. Ass'n., 79 F.3d 1415, 1428 (5th Cir.1996).